**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RONALD N. ZWIEG, and
DAVID E. GERDES, Trustees
for the Minneapolis Retail
Meat Cutters and Food Handlers
Health and Welfare Fund,

Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 05-577 (MJD/AJB)

SWANSON MEATS, INC., and
CHRISTOPHERSON MEATS CO.,

Defendants.

---

Pamela Hodges Nissen and Sean O. Skrypek, McGrann Shea Anderson Carnival Straughn & Lamb, Chtd., Counsel for Plaintiffs.

Konstandinos Nicklow, Meshbesher & Spence, Ltd., Counsel for Defendants.

---

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 17] and Plaintiffs' Motion for Summary Judgment [Docket No. 26]. Also before the Court is Defendants' Motion to Strike. [Docket No. 41] The Court heard oral argument on May 26, 2006.

## II. FACTUAL BACKGROUND

### A. Parties

The Minneapolis Retail Meat Cutters and Food Handlers Health and Welfare Fund (the "Fund") is a multi-employer, jointly-trusteed fringe benefit plan administered in accordance with ERISA, for the benefit of employees. It collects contributions from participating employers and administers the fringe benefit funds for the benefit of the unionized employees. Plaintiffs Ronald Zwieg and David Gerdes are Trustees of the Fund.

Swanson Meats, Inc. ("Swanson") and Christopherson Meats Co. ("Christopherson") own and operate a wholesale meat supply business in the Twin Cities. Their employees are members of United Food and Commercial Workers Union Local 134 ("Local 134"). Mark Mann is the president of Christopherson.

Wilson McShane Corporation ("Wilson McShane") is the third-party administrator for the Fund.

### B. 2000 Collective Bargaining Agreement

In August 2000, Swanson entered into a collective bargaining agreement with Local 134, covering the period from July 31, 2000 to August 1, 2004 ("the Local 134 2000 CBA"). The Local 134 2000 CBA states that it is an agreement "entered into by and between United Food and Commercial Workers Local 134, AFL-CIO, hereinafter referred to as the 'Union,' and Swanson Meats, Inc.,

hereinafter referred to as the 'Employer.'"

Article VI, Section 1, of the Local 134 2000 CBA required Swanson to make a weekly contribution of $74.00 to the Fund on behalf of any full-time employee. Article VI, Section 2, of the Local 134 2000 CBA required Swanson to make a weekly contribution of $24.00 to the Fund on behalf of any part-time employee.

Article VI, Section 4 of the CBA states: "In order to preserve the aforementioned program of benefits, the Employer agrees to make contributions in the amount and on the effective date which shall be determined by a majority vote of the board of trustees which administer the Health and Welfare Fund." The following section, Article VI, Section 5, provides, "The Employer is bound by the existing Trust Agreement covering the aforesaid Trust Fund and any amendment thereto. Such Trust Fund is jointly administered, is part of this Agreement, and is in lieu of all Employer established programs . . ."

The Declarations of Trust to which Swanson is bound is between the Amalgamated Meat Cutters and Food Handlers of North America AFL-CIO District Local 653 and 653A and Food Industry Employers Minneapolis and Surrounding Areas ("Trust Agreement").

For the duration of the Local 134 2000 CBA, Swanson paid Wilson McShane based on the contribution rates of $74.00 per week for full-time employees and $24.00 per week for part-time employees. Wilson McShane did not request any

increased payments from Swanson.

**C. Contribution Rate Increases**

On August 16, 2004, after the expiration of the Local 134 2000 CBA, Pamela Hoppe, the Fund Administrator, sent a letter to Swanson stating that Swanson owed additional contributions to the Fund. Hoppe explained that Wilson McShane had not properly billed Swanson during the time that the Local 134 2000 CBA was in effect. According to Hoppe, the Fund's Trustees had twice authorized increases in the weekly contribution rates, but Wilson McShane failed to notify Swanson of these changes or to bill it under the increased rates. Hoppe's letter included an invoice for these past increased contribution amounts. This letter was the first time that Swanson was informed of the contribution rate increases. Swanson has refused to pay the rate increases.

Plaintiffs claim that on April 11, 2001, the Trustees voted to increase the weekly contribution rate to $79.00 for full-time employees and $26.50 for part-time employees, effective September 2, 2001. The April 11, 2001 Meeting Minutes state:

> IV. NEW BUSINESS
>
> A. Benefit Increases
>
> It was moved by Trustee Sawicky, seconded by Trustee Duehn, and **RESOLVED** that the negotiated benefit improvements and contribution increases be accepted by the Board.

(Apr. 11, 2001 Meeting Minutes at 5.)

The meeting minutes are unsigned. The Minutes from the June 28, 2001 Trustees meeting, also unsigned, state:

> It was moved by Trustee Sawicky, seconded by Trustee Laska, and **RESOLVED** that the minutes of the Board of Trustees meetings of April 11, 2001, be approved as submitted. The minutes were then executed by the Trustees and the Administrator was instructed to place them in the Plan's permanent files.

(June 28, 2001 Minutes at 1.)

It is undisputed that Swanson did not negotiate any contribution increases between the execution of the Local 134 2000 CBA and April 11, 2001.

Plaintiffs also claim that on February 5, 2003, the Trustees voted to increase the weekly contribution rate to $91.00 for full-time employees and $32.50 for part-time employees, effective March 2, 2003. The February 5, 2003 Minutes state:

> V. <u>CONTRIBUTION INCREASE</u>
>
> The Board then turned its attention to the additional $8 full-time/$4 part-time contributions which can be accessed under the current collective bargaining agreement. It was the consensus of the Board that these additional contributions are necessary. It was therefore moved by Trustee Gerdes, seconded by Trustee Duehn, and **RESOLVED** that the $8 full-time/$4 part-time contributions be put in place, effective March 2, 2003 for March hours worked, which is the same schedule for implementation of the currently scheduled collective bargaining agreement increases.

(Feb. 5, 2003 Meeting Minutes at 6.) The meeting minutes are unsigned. The

February 26, 2003 Meeting Minutes, also unsigned, state: "It was moved by Trustee Sawicky, seconded by Trustee Dougherty, and **RESOLVED** that the minutes of the meetings of December 18, 2002 and February 5, 2003 be approved as submitted." (Feb. 26, 2003 Minutes at 1.)

### D. Local 653 Collective Bargaining Agreements

United Food and Commercial Workers Union District Local 653 - AFL-CIO ("Local 653") covers retail and service employees, whereas Local 134 covers wholesale employees. There is only one Board of Trustees that governs one Minneapolis Retail Meat Cutters Health and Welfare Fund, to which employers who are signatories to the Local 134 CBA or the Local 653 CBA make contributions. Both Locals belong to the same Union, the Amalgamated Meat Cutters Union.

The Local 653 CBA covering the time period March 4, 2001 through February 29, 2004, explicitly contains the rate increases that Plaintiffs claim apply to Swanson. (<u>See</u> Local 653 CBA Article XV(C) (setting forth the following rates: $74.00/$24.00, effective March 4, 2001; $79.00/$26.50, effective September 2, 2001; $83.00/$28.50, effective March 2, 2003; "up to an additional contribution as determined by the Board of Trustees" of $8.00/$4.00, effective March 3, 2002).) Swanson's new Local 134 CBA, covering August 2, 2004 to July 30, 2007, explicitly sets out the contribution rate increases, and they are the same increases

as appear in the new Local 653 CBA.

### E. Procedural History

Plaintiffs filed this Complaint against Defendants on March 17, 2005, seeking Count I, Amount Due (against Swanson); Count II, Assumption of Liability (against Christopherson); and Count III, Additional Damages and Remedies. The parties have now brought cross motions for summary judgment in this matter.

## III. DISCUSSION

### A. Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted). "The filing of cross-motions does not concede the absence of a triable issue of fact. The court is bound in such cases to deny both motions if it finds . . . there is actually a genuine issue of material fact." Jacobson v. Maryland Cas. Co., 336 F.2d 72, 75 (8th Cir. 1964).

The question of whether or not any contract, including a collective bargaining agreement, is ambiguous is a question of law. Cent. States Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1350 (8th Cir. 1990). A contract is ambiguous only if it is reasonably susceptible to more than one construction. Id. "In ascertaining whether a contract is reasonably susceptible to more than one construction, words are to be given their plain and ordinary meaning as understood by a reasonable, average person." Id. (citation omitted). The Court must determine whether the contract is unambiguous based solely on the language of the contract. If a contract is unambiguous, its interpretation is a question of law based solely on the contents of the contract itself. Cooper v. Lakewood Eng'g & Mfg. Co., 874 F. Supp. 947, 953 (D. Minn. 1994).

**B. Motion to Strike**

The Court must first determine which evidence it will examine when deciding the cross motions for summary judgment. Defendants ask the Court to strike Paragraphs 4 through 10 of the Hoppe Affidavit, along with Exhibits C through H of that affidavit, and Exhibits A and B to the Skrypek Affidavit. Based on the analysis below, the Court denies Defendants' motion to strike.

**1. Standard**

Documents cannot be considered on a motion for summary judgment

unless they are "authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." Stuart v. General Motors Corp., 217 F.3d 621, 636 n.20 (8th Cir. 2000).

**2. Hoppe Affidavit**

Defendants move to strike Paragraphs 4 through 10 of the April 3, 2006 Hoppe Affidavit, along with Exhibits C-H to that Affidavit. Paragraph 4 recounts the contribution requirements under the Local 134 2000 CBA and the Declarations of Trust and states that a true and correct copy of the Declarations of Trust is attached as Exhibit C. Paragraph 5 recounts the Trustees' April 11, 2001 vote and states that a true and correct copy of the Minutes from that date is attached as Exhibit D. Paragraph 6 states that true and correct copies of the Local 653 2001 CBA and the Local 653 2004 CBA are attached as Exhibits E and F. Paragraph 7 recounts the Trustees' vote from February 5, 2003, and states that a true and correct copy of the Minutes from that date is attached as Exhibit G. Paragraph 8 states the liquidated damages, interest requirements, and costs and attorney fees requirements provided in the Declarations of Trust. Paragraph 9 states that the Declarations of Trust require employers to submit to audits. Paragraph 10 states the findings of the Fund's auditor's audit of Swanson and attaches as Exhibit H a true and correct copy of the records used in the audit.

**a. Fund Trustee Meeting Minutes (¶¶ 5, 7; Exs. D, G.)**

Defendants claim that Hoppe has not affirmatively shown that she is competent to testify whether Exhibits D and G to her Affidavit constitute true and correct copies of the Trustee Meeting Minutes. Hoppe is the Fund administrator and record custodian. Thus, the Court can infer that her sworn statements regarding the administration of the Funds are based on personal knowledge. See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (holding that affiants' "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore"). Further, in her Supplemental Affidavit, Hoppe avers that the redacted provisions have no bearing on the issues in this lawsuit, that the previously produced portions of the minutes are true and accurate copies, that there has never been a subsequent draft or modification to the minutes, and that the minutes have been preserved in her custody in the regular course of business.

Both Hoppe's affidavit and the attached exhibits are admissible under Federal Rule of Evidence 803(6), allowing for a hearsay exception when the record custodian offers reports timely made in the course of regularly conducted business activity, and there is no indication of untrustworthiness.

**b. Audit Records**

Defendants further argue that Paragraph 10 of Hoppe's affidavit, and

attached Exhibit H, recounting the amount of contributions, damages, and interest owed to the Fund, as discovered by Plaintiffs' auditor, Timothy Sobotka, is inadmissible hearsay, simply repeating the auditor's statements.

In this case, Sobotka completed the audits in the standard course of business. Sobotka confirmed that, based upon this audit, he found outstanding contributions, liquidated damages, and interest payment due to the Fund. In accordance with normal business practices, Sobotka delivered all records detailing his audit to Hoppe after he completed the audit. Based on the sworn testimony of both the auditor, Sobotka, and the Fund Administrator and record custodian, Hoppe, the audit records are admissible under Rule 803(6). In any case, Plaintiffs have also submitted an affidavit by Sobotka, averring to the results of his audit.

**c. Remaining Paragraphs and Exhibits**

Hoppe Exhibits C, E, and F, and Paragraphs 4, 6, 8, and 9 are admissible under the business records exception because Hoppe has the responsibility to implement the provisions of the applicable bargaining agreements, trust agreements, and regulations governing the employers' contributions to the Fund.

**3. Depositions Attached to Skrypek Affidavit**

Defendants also argue that Plaintiffs have failed to provide proper authentication in the form of a court "reporter's certification that the deposition is a true record of the testimony of the deponent" for the excerpts from depositions

attached to the Skrypek affidavit as Exhibits A and B. Orr v. Bank of Am., 285 F.3d 764, 774 (9th Cir. 2002).

Plaintiffs have now filed a supplemental affidavit that includes the required court reporter's certifications for the deposition excerpts. Additionally, the authenticity of the excerpts was sworn by an officer of the Court, Plaintiffs' attorney Sean Skrypek, and Defendants have made no allegation that the deposition excerpts were inaccurate. Thus, because Plaintiffs have now supplied the required court reporter certification, the Court denies Defendants' motion to strike the deposition excerpts.

### C. Summary Judgment Motions

#### 1. Interpretation of Article VI, Section 4 of the CBA

Article VI, Section 4 of the Local 134 2000 CBA states: "In order to preserve the aforementioned program of benefits, the Employer agrees to make contributions in the amount and on the effective date which shall be determined by a majority vote of the board of trustees which administer the Health and Welfare Fund." This language unambiguously requires Swanson to pay any contribution rate that is approved by the majority of the Trustees. The plain language of the CBA does not require that any particular rate increase need apply or that any potential rate increase must be listed in the CBA. There is no requirement that, in addition to executing the CBA, Swanson would have to agree

in writing to any rate increase approved by the majority of the Trustees.

Defendants note that the new Local 134 CBA contains the same Section 4 clause, but also lists particular dates and rate increases. The wording of the new CBA is not relevant to the Court's interpretation of the clear language of the 2000 CBA.

Furthermore, the fact that Wilson McShane failed to notify Swanson of the alleged increase does not alter Swanson's obligations under the CBA. The Fund and its participants are not held accountable for administrative errors by a third party, in this case, Wilson McShane's alleged failure to collect the correct contribution rates for Swanson's employees. See Combs v. Hawk Contracting, Inc., 543 F. Supp. 825, 829 (W.D. Pa. 1982.).

The Court concludes that the Local 134 2000 CBA unambiguously requires Swanson to pay any contribution rate increase approved by the majority of the Trustees. Thus, the Court must now address whether the Trustees did, in fact, raise contribution rates for Local 134 employers on April 11, 2001 and February 5, 2003.

### 2. Evidence that Trustees Agreed to Raise Contribution Rates

#### a. Contents of the Meeting Minutes

Neither the April 11, 2001 Meeting Minutes, nor the February 5, 2003

Meeting Minutes mention Swanson or Local 134 in connection with the contribution rate increases. Defendants argue that the rate increase approved on those dates applied only to Local 653, which had negotiated those particular numerical increases in its CBA. They note that the Fund's August 16, 2004, demand letter referred to Swanson's "recent labor contract negotiations with UFCW Local 653."

Defendants also note that the April 11, 2001, resolution applied to "the negotiated . . . contribution increases." They claim that this resolution cannot apply to Swanson because the Local 134 2000 CBA included no negotiated interim rate increases. They also note that the February 5, 2003 resolution referred to the contribution rate increases "which can be accessed under the current collective bargaining agreement." Defendants argue that this resolution cannot apply to Swanson because the Local 134 2000 CBA did not mention any additional $8.00/$4.00 contribution increases. In any case, the increases demanded by the fund do not match the $8.00/$4.00 amount. Instead, the Fund's August 16, 2004 letter demanded increases of $5.00/$2.50 in 2001 and $12.00/$6.00 in 2003.

The increases appear to be based on the language of the Local 653 CBA. Under that CBA, the first increase was from $74.00/$24.00 in March 2001 to $79.00/$26.50 in September 2001, which mirrors the claimed September 2001 increase for Local 134. Then the Local 653 CBA had an increase to

$83.00/$28.50, effective March 2003, plus an optional increase of $8.00/$4.00. The combination of the increase to $83.00/$28.50, plus another increase of $8.00/$4.00, results in the $91.00/$32.50 rate claimed by Plaintiffs for 2003.

Finally, Defendants point out that Article VI, Section 4, states that Swanson shall make increased contributions "in the amount and on the effective date which shall be determined by a majority vote of the board of trustees." Defendants argue that because the Trustees' resolutions do not state the "amount" or the "effective date" of the increased contributions, Article VI, Section 4 does not provide a basis for increasing Swanson's contribution amount.

Plaintiffs respond that, although the wording in the Trustees' Meeting Minutes matches the wording found in other collective bargaining agreements to which Defendants are not signatories, that does not affect the fact that the Trustees generally raised the contribution rates to the Fund. They assert that the language regarding the rate increase in the Minutes is similar to the language of the Local 653 CBA because, historically, the contribution rate for the entire Fund has been determined by calculating the cost of providing health and welfare coverage for Local 653 participants.

The Court concludes that the language of the Meeting Minutes is ambiguous as to whether the rate increases applied to Local 134. The pertinent portions of the Minutes do not clearly include or exclude Local 134. Nor do they

state whether the increases applied exclusively to Local 653. In fact, they do not mention Local 653. The Court cannot grant either motion for summary judgment based on the vague language of the Meeting Minutes.

**b. Party Testimony**

Both Plaintiffs and Defendants refer to conflicting testimony from Trustees and Wilson McShane employees to support their interpretations of the Meeting Minutes. The testimony of management trustee, David Gerdes, supports Defendants' theory that the Trustees voted only to increase the contribution rates for Local 653, while the testimony of labor trustee, Ronald Zwieg, supports Plaintiffs' theory that the resolutions applied to Swanson.

**i. David Gerdes**

Trustee Gerdes was not involved in negotiating CBAs with Defendants; however, he testified that Local 653 negotiated the Local 134 2000 CBA with Swanson. Gerdes also testified that he did not know whether the contribution increases approved by the Trustees on February 5, 2003, applied to Swanson. Based on the documents before him during the deposition, he would opine that the increase would not apply to Swanson.

**ii. Ronald Zwieg**

Zwieg is a Trustee and also the President of Local 653. He testified that the Fund contribution rates are set by evaluating the retail participants, and then the

contribution rates are passed on to every employer who contributes to the Fund.

**iii. Pamela Hoppe**

Pamela Hoppe is the Fund Administrator. She works for Wilson McShane. On occasion, Hoppe indicated that she was unsure regarding the correct contribution rates for Swanson and attempted to clarify the correct contribution rate with auditor Sobotka.

Hoppe does not participate in negotiating CBAs. She testified that Fund Trustees, such as Gerdes, would have more knowledge than she regarding the process of increasing an employer's weekly contribution rate. Hoppe never made any personal inquiry of the Fund's Trustees regarding whether the 2001 and 2003 contribution rate increases applied to wholesale employers, such as Swanson. Finally, she acknowledged that it would be possible for different employers to have different weekly contribution rates to the Fund at the same time because the CBAs could specify a different date when a contribution rate would go into effect.

**iv. Timothy Sobotka**

Sobotka is a trust fund auditor and has been employed by Wilson McShane for twenty-four years. He has conducted approximately one thousand audits of employers who contribute to the Fund. He testified that it is typical for wholesale contribution rates to be lower than retail contribution rates. Sobotka also testified that he was alerted to a problem with Swanson's contribution rate under the Local

134 2000 CBA because it was unusual to have the same rate carry through all three years of the CBA.

The conflicting testimony of the above witnesses regarding whether the Trustees' approval of contribution rates applied to Swanson precludes the Court from granting either motion for summary judgment. At this stage in the litigation, the Court cannot credit one witness's credibility over another's. There is a genuine issue of material fact regarding whether the Trustees voted to raise the rates of Local Union 134 employers. The question of whether the Trustees' resolutions applied to Swanson will be determined at trial.

**3. Relationship Between 653 and Local Union 134**

Because Defendants assert that the Trustees only raised contribution rates with respect to Local 653, the parties dispute whether the Local 653 CBA has any effect on Swanson's contribution rates. Employers who are signatories to the Local 134 CBA or the Local 653 CBA make contributions to the same Fund. Both Locals belong to the same Union, the Amalgamated Meat Cutters Union.

Despite these ties between Local 134 and Local 653, there is no evidence that Local 653 rates are automatically binding on Swanson, and the language of the Local 134 2000 CBA precludes that interpretation. The CBA clearly sets Swanson's contribution rates and provides that those rates can only increase if the majority of the Trustees vote to change the rates. Additionally, the evidence

before the Court demonstrates that Swanson's employees are only members of Local 134, and that Swanson is not a party to the Local 653 CBA.

The Local 134 2000 CBA does not reference Local 653 or any other collective bargaining organizations or contracts, although it does expressly incorporate the Fund's Trust Agreement. See Harris v. Lockheed Aircraft Corp., 572 F.2d 138, 141 (6th Cir. 1978) ("Generally, a certified union is authorized to bargain only for those employees in the appropriate bargaining unit.") (citations omitted). The Court concludes that Swanson is not automatically bound by any language in the Local 653 2001 CBA or by any Trustee action that was directed solely toward Local 653.

The pertinent issue remaining is whether the Trustees' resolutions increasing contribution rates were directed toward Local 134. Because there is a genuine issue of material fact regarding whether the Trustees voted to increase Swanson's contribution rates, both motions for summary judgment are denied, and the Court does not reach the other issues raised in the parties' memoranda.

According, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment [Docket No. 17] is **DENIED**.

2. Plaintiffs' Motion for Summary Judgment [Docket No. 26] is **DENIED**.

3. Defendants' Motion to Strike [Docket No. 41] is **DENIED**.

Dated: July 26, 2006

s / Michael J. Davis
Judge Michael J. Davis
United States District Court